And would you call the next case, please? 3-10-0878, Williams-Millenberger, appellant to Wayne Young versus the state of Illinois, et al, Appalachia Police. Mr. Young. Thank you, Your Honor. May it please the court and counsel, we are here on behalf of the appellant from an administrative decision, a joint decision made by the Illinois Department of Human Services and the Illinois Department of Health Care and Family Services, formerly Public Aid. They joined in a decision having to do with Medicaid eligibility. This case has to do with the eligibility of Mr. Schnellenbarger, the institutionalized spouse. By the way, it's a community case. I don't know how familiar the court is, but in a community case, there is a spouse in the institution, which is Mr. Schnellenbarger. There is a spouse in the community, which is Mrs. Schnellenbarger. So it's not a single case. Under the Federal Anti-Impoverishment Act, there is a certain community spouse asset allowance that's allowed to the spouse at home, as well as an income allowance. This particular case has to do with the eligibility of Mr. Schnellenbarger, who is the institutionalized spouse, for the months of November, December of 2005, and January and February of 2006. Before you address the merits, could you touch on jurisdiction and the timing of your notice of appeal? Yeah, I mean, this case got really confused between Iroquois County and Kankakee County because Judge Tongate, who originally heard the case in Iroquois County, was reassigned to Kankakee. And after she, I mean, the decision that she, the initial decision she made, she came quite a while after it was taken under advisement because, you know, she acknowledged she struggled. I'm curious about why you think she took it under advisement. And on page 6 of your brief, you refer to, you cite to page C3 of the record. And on C3 of the record, there's nothing in the judge's minute entry that says the matter was taken under advisement on June 18th. Well, that's the day I was in Kankakee, and that's the judge when she corrected the decision she acknowledged. I thought in her correspondence that we were there on the 18th. She had taken it under advisement and apparently had intended. And the judge did correct the date of the minute entry but did not correct the body of the minute entry, which indicated the docket was to stand, that she had ruled that day. Now, she did indicate later she went back and listened to the audio recordings of the proceedings. Correct. So, I mean, I would love to hear that audio recording of the proceedings and hear her say, I'm taking the matter under advisement. But you have not provided that to us. Is there a reason why? No, I thought she had corrected the matter by acknowledging that she had taken it under advisement and had ruled on the 21st. Can you direct me to that point in the record that says she took it under advisement? Not. Well, it was just the correspondence I thought between us. She wrote a letter which I thought we included in the appendix. So it's your recollection that her letter says she took the matter under advisement? Well. Because I read her letter to say I was very surprised to have received your letter dated October 8th concerning the above case. On June 21st, the case was called and the motion to reconsider was denied with the docket to stand as the order. That's what the judge wrote. Well, but I think she acknowledged that we had, in fact, been there on the 18th, which was on the Friday when she did take the matter under advisement. She acknowledged we were there on the 18th. I agree with you there. And that the decision was rendered on the 21st, which would have been the following Monday. That was. All right. So you think we have jurisdiction because. Well, first of all, the file stayed in Kankakee. And as we said in the record in my correspondence, we were calling the clerk in Waseca weekly. And they said, we have no decision from Judge Tungate. We have no decision from Judge Tungate. And I finally took it upon myself to write to her. Were you telling us as an officer of the court that when the clerk docketed on June 21st, she mailed a copy of the minute entry to you, your office did not receive it? Did never receive that. And I don't think our opposing counsel did either. And I think that was, you know, acknowledged. But no, we absolutely did not receive any indication that she had, in fact, ruled. You know, but I, but I know the risk because there are cases out there that basically say it's up to counsel to be able to go, you know, to monitor. What was the date you filed the notice of appeal? November the 17th. And how does that give us jurisdiction? Well, it was on November the 10th that she corrected the record and the return of the record to Iroquois County. She had been out of county. Now, I suppose there is this issue of, you know, whether or not the decision would have to be lodged with the clerk in Waseca before the, there would be a final decision. I mean, in my view, you know, the court is to act publicly and the court is to act, you know, to give it, you know, its reasons and to act, you know, all of those kinds of things. And she did, didn't she? It was, it was recorded. It was recorded. The decision wasn't recorded. All right. Go ahead with the merits. Yeah. Okay. The, the, the clerk finally got the file back from Kankakee to Iroquois County, you know, in November. And that's when the docket entry had been corrected. And I think the court acknowledged that the, in the record that the file was being returned to Iroquois County. So there was that, certainly that problem there. With respect to the merits, the issue again has to do with the eligibility of Mr. Schnellenbarger for medical assistance under the Illinois Medicare program for November, December 2005, in January and February of 2006. Mrs. Schnellenbarger, as his agent, had made an effort to, made two applications for medical assistance, which were denied in the first instance. And apparently she was told that she was denied because of a, over assets on the second. In February, she hired an approved representative, a financial advisor, to assist her. He withdrew the earlier application, which apparently had been pending there, and refiled the application. And that decision, that new application was in fact ruled upon in July, or July of 2006, I think on the 19th of July. That decision determined that the spouse of, the community spouse asset allowance at that time was $99,540. The two spouses were under that by about $3,000. That decision acknowledges that the assets at the time of the decision were below the community spouse asset allowance. Under Illinois Medicaid rules, that is the important date. And that's really the very issue which is before this court, is what date is to be used to determine what the applicable assets were at the time of the decision. And the Illinois policy manual is very, very clear on that point. First of all, with respect to backdating, you can go back 90 days, three full months prior to the month you make the application. So in this case, it reaches back to November the 1st. When the policy manual is applied, it states that the client is the one that determines whether or not you ask for backdating. It repeats in a number of places that you always, uses the word always, consider backdating the application. And only not backdate if the client declines that it be backdated. There's also the manual provisions which we've pointed to that says the client basically stays in control of this. The client has privacy rights. The client has the right to accept or reject any benefit that they're entitled to under the law or to reject it, either to accept it or reject it. What is the legal effect of the manual for our purposes? The legal effect under the Miller case, as we said, it said even if the manual is incorrect, the department has to follow it because that's what the public relies upon. The initial provision of it says these are the official policies of the department. They're published online. That's what people rely upon for purposes of trying to determine eligibility, to arrange their affairs. And in this instance, she was somewhat over assets and did the typical thing that most people do, is the first thing you do is you counsel your client to go out and buy a prepaid burial plan for you and your spouse because that becomes an exempt asset and doesn't count against you, which she did then. In this case, and here's the real crux of the matter, is when the decision was made in July, they used the date of decision to make the determination, but then arbitrarily and capriciously said we're going to deny the backdated months. If you look at this record very carefully, on March the 1st, when they said it was effective, these parties were still over assets. But it was an acceptable decision because the department is to use the date of decision to determine what the assets were as of that date. And that decision, that amount of assets is what determines what the assets are in each and every backdated month. When general counsel for the department got involved, he suggested that there has to be a review of each of the backdated months to determine whether eligibility existed or not. He even said at one point, the client thinks, and you can see this in the record, and urges that the client gets to decide whether there's backdated or not. Well, the policy manual is very express about that. It says the client is the one who gets to determine whether or not there's going to be a backdated month or not. If it's a backdated month, the question then becomes what is the decision, what assets are to be counted in those months? And those assets are clearly the assets to be determined as of the date of decision. There's always the ability for the clients to arrange their affairs during the whole application process. You know, maybe a worker might even suggest that, look, you're $10,000 over asset, go buy a funeral plan. You know, we haven't made the final decision yet. So in this instance, when the decision was made in July, on July the 19th, the community, both spouses, the institutionalized spouse and the community spouse together had about $96,000 worth of assets, non-exempt assets. That's well several thousand dollars below the $99,540 limit. And they correctly found that they were eligible and that they were under assets. But it was just purely arbitrary and capricious to say that we're only going to allow this decision to be effective from March 1st on and to disallow those backdated months was completely inappropriate because the client is entitled to have the application reach back 90 days prior to the month in which the application was made, which would have gone, in this instance, to November the 1st. The policy manual at 150701 says always determine eligibility for backdating. That's repeated in policy manual 170205. Always determine the applicable, if the applicant qualifies for medical backdating, it's always up to the client unless the client rejects it. So backdating was to be allowed in this instance. The asset determination is to be made at the date of decision. But somehow or another, because general counsel got involved and was trying to urge that a separate determination has to be made as the backdated months, which is expressly prohibited into the policy manual, which states at 150401, if medical eligibility includes a backdated month, use the verified amount of assets on the date of decision. Couldn't be plainer. The next sentence is in bold, and the bold is in the original. Do not make a separate determination of the assets for a backdated month. How and why they could then deny eligibility for the backdated months in this instance just escapes any application of Illinois law. Now, general counsel was trying to suggest that federal law would apply, and somehow the earlier applications might have some sort of prejudice or fixity that attaches to that, all of which would basically suggest is clear nonsense because there is no such provision under Illinois law. And he made reference to the federal law, and in this instance, the approved representative made an inquiry of the Center for Medicare and Medicaid, which is the federal department overseeing both the federal program under Medicare and the state programs under Medicaid, and Mr. Trudeau wrote back to the specific approved representative in this case and made it very clear when it appears at page 168 of the record where he said, no, it's a whole new application. And actually, if you read the record where general counsel for the department was testifying, he said, no, it was a new case. It was a brand-new case. There is no prejudice attaches to that earlier application. It's up to the client to accept or reject whatever benefits there are, and it's perfectly acceptable for the client to say, I withdraw the application, the earlier applications, and then reapply at a later time. Counsel has two minutes. If you look at this case from the simple standpoint of had the earlier efforts made by Mrs. Schnellenberger on her own never been made, we would have never been here. But somehow, and I think this is where the trial court went awry, she made really no reference to any of the policy decisions, but she treated it like it was a court case and tried to find that there was some sort of collateral, estoppel, or res judicata, there had been a finding. It wasn't appealed. That doesn't apply here. It's not a court case before the administrative agency. The client stays in control, and the client has the right to withdraw the application and to reapply, and she did in this instance through a representative. The department made the right decision. They just refused the vacnated months, and under the policy manual, they were entitled to eligibility for those months also. So we'd ask that the court reverse the decision of the departments in order that they give Mr. Schnellenberger his medical assistance as of November the 1st of 2005. Thank you. Thank you, Mr. Young. Counsel, I'm sorry. Is it Elitz or Elitz? Elitz. Elitz, okay. Good morning. May it please the court, counsel. I'm my assistant attorney general Carl Elitz for the Department of Human Services and the Department of Health Care and Family Services. Obviously, Your Honor, I'd like to address the first issue first because I think it's the one that controls here, which is whether the notice of appeal in this case was timely. The record shows that it was not timely, and for that reason, the appeal should be dismissed. The relevant part of the court's docket is included in the appendix to my brief. It's the only information we have as to what the court did in June of 2010. The entry in that docket says, case called, Attorney Young for the plaintiff. AAG Lengel appears. She would be my person below, the person who represents the agency below. Arguments heard. Motion to consider is denied. Docket to stand, and then there's an entry for the clerk, and then below that it says, copy of entry mailed to Attorney Young and then AAG Lengel, and that's the entry. Did AAG Lengel receive it? Your Honor, I don't know the answer to that question. It's probably an answer I probably should have prepared for you. It came to me as I was sitting here listening to you ask my opponent. My argument, though, is that it doesn't matter. In a Supreme Court decision in 1990, Granite City, the Illinois Supreme Court had a case that was just like this one, where a notice of appeal was filed four months after it should have been filed. The attorney who filed that notice of appeal four months late claimed he didn't get it and claimed that it was only fair that he be allowed to take the appeal, and the Supreme Court said, no, that's not true. If the entry of the judgment was made in open court in public and it wasn't that case, that would bind the attorney to knowing that he had 30 days to file a notice of appeal. The same logic applies to this case. According to this docket entry, Mr. Young was present when the judge told him, your motion for reconsideration is denied. Now, there's an argument made that it was under advisement, but that's not what the record shows. There's nothing in Judge Tungate's letter that I can see that suggests that she had any understanding that the motion was under advisement. She expressed a surprise at the letter in October and doesn't change the substance of the entry, although she does point out that he's correct about the date. Instead of being in June 22nd, it should have been three days earlier on the 18th. Which is relevant if the notice of appeal was filed within 30 days of June 21st. Yes, if the notice of appeal were filed on the 32nd day, or actually I think she moved the date in the wrong direction for the appellant. She said that it wasn't the 22nd, it was the 18th. So there was potential for my opponent to be prejudiced by that, in which case we'd have a different case. But she actually moved the goal posts further away for him and said, you're later than you think you are. It wasn't on the 22nd, it was on the 18th. The point is that it was in June, not of 2010, 2009. When the judge corrected the minute entry, didn't she indicate that she had reviewed the audio recording? She did, but the audio recordings were not made part of the record on appeal. And so did she correct the minute entry to show that she had taken the matter under advisement rather than ordering the doctor to stay in? No, she didn't. I don't believe, Your Honor. I'd have to look and see what the order was, and I'm not sure. I was trying to find it earlier, whether she, it's here, and I won't quote it, but it's here in my brief on page A19 of the appendix, where she says what she did. And I don't believe there's any reference here to having had the prior motion to reconsider under advisement. She says that a mistake was brought to the court's attention by Mr. Young. The court has obtained the audio recordings. The entry of the minutes for June 21 bear the wrong date. And I'm just paraphrasing this, by the way. Said minutes entered into the record as of June 21 are amended to reflect the proper date of June 18. A copy of these minutes reflecting the correction of the date are ordered to be sent by fax and mail to Attorney Young and Attorney Mengel, and copies of said minutes are to be faxed to the Iroquois County Circuit Court Clerk this date. So there's nothing here to suggest that anything that was put in the record into the court's docket in June of 2010 was wrong, except for the date. These minute entries bear the case number of the Iroquois County case, so I assume it's in the computer under that case number. That may be a fair assumption. I don't know that it matters. I mean, Mr. Young was there in the courtroom when the judge told him his motion to reconsider was denied. The file may not have been in Iroquois County, but certainly the computer entry was. I don't doubt that, Your Honor. I'm not sure I understand the significance, though. Okay. Well, it depends on whether you consider the files to be electronic or hard copy. In this day and age, we rely on these electronic entries all the time. Yes, I suppose there could be an argument that in 1990, when the Supreme Court decided the prior case I cited, that there wasn't that problem. But I believe the argument should be, and I believe the judgment should be, that when the attorney is in the room and is told that there's going to be an entry made on the docket, and, in fact, there is an entry made somehow, the attorney who discovers that it's not made on the docket knows the clock is ticking against him. He's got 30 days from when he stood there and the judge told him it was going to be ruled against him, and he needs to clean it up in the 30 days. And the case I did cite, the Granite City Lodge case, talks about the importance of these things coming to an end and not staying open forever. There's the potential that an attorney could say, Judge, I thought you had it under advisement. It's even more difficult in this case that there's a potential for whatever attorney brings the file to the courthouse delays in bringing it back. You know, Judge, I'm not sure I understand the procedures in the circuit court as well as either my opponent or you do. And that may be why I'm having a little trouble understanding what might be the ramifications of the court file being electronic. Somebody brings the hard file to the courtroom. And in this case, the courtroom was in another county by agreement of the parties. So somehow the hard file got there. But the computer entry was dated on Monday following the Friday, June 18th hearing. Yes. So in cyber space, there's a document entry. But we don't know why the file didn't make it back to the Iroquois County Courthouse because the record doesn't show us who was responsible for that. Yes. Your Honor, I think given the nature of your questions, unless there are questions about the subtleties of Medicaid law, and I can certainly answer questions, I will. But otherwise, I think I'd like to stand on my feet. Thank you, Mr. Elitz. Mr. Young, would you like to respond? Yes. We included, obviously the jurisdiction matter is very important, and I acknowledge that. We included as part of some of the correspondence in the reply brief. In this case, I mean, I don't suppose it shows that, you know, counsel picked up the file or anything, but I can tell you that Judge Tungate, being from Iroquois County, took the file to Kankakee herself. In her letter of October the 15th, she says, I have no explanation why the file was never sent back to Iroquois County. The clerk repeatedly told us they knew nothing about a decision when we were asking on a very specific, periodic basis. I think I represented we were calling up there weekly asking Arlene Hines, the clerk in Iroquois County, do you have any kind of decision from Judge Tungate? We were repeatedly told no, no, no. Well, let me maybe clarify something for me, and I don't have it in front of me, but my notes to myself indicate that her November, Judge Tungate's November order says she listened to the recording, and it confirmed that the motion to reconsider was in fact denied in open court on June 18th. That's the way, that's a paraphrase that I wrote of the November order, is that a fair paraphrase, Elise, is that what the November order? I hope not, because I was there, and I know that the court was busy. She had a courtroom full of people, and she says, I'm taking this matter under advisement. What day are you speaking? On Friday the 18th. June 18th. Yes, and that notice of hearing should appear in the file. I was looking for it, but I didn't find it. It should appear in the record that's here. We did appear in Kankakee and argue the matter, and it was not decided in my presence. I will assure you as an officer of this court that there was no decision made in open court regarding the motion to reconsider. Well, here's the problem. Her November order says there was, and she blamed us for listening to a recording, and it's a recording that you haven't provided to us. In fact, I think one of her letters even invited you all to go out and listen to this. She even referred to the fact, I think, in whatever that letter was in October, about the recording would be available should anybody want to go give it a listen. Well, and then from there, I understood that she listened to it and made a correction, and, you know, certainly I relied upon that because she acknowledged that it had been an error. What did she acknowledge was the mistake? That the hearing was wrong. I don't think she acknowledged, or I don't think she went so far as, I never understood her to go so far as to say she had made a rule in open court because I know that wasn't true. I was there. I left, and we started calling the clerk after a couple of weeks. But I am troubled by you referring, it's your burden to persuade us that we have jurisdiction. And on page six of your brief, you say, unequivocally, the matter was taken under advisement, and you cite to C3, date of entry, 11-10-10. And I don't see that she took the matter under advisement by looking either at the June 18th docket entry or the date of entry, November 10th of 2010. And that's my concern. Why is that sentence in your brief? I suppose because I was there and I knew that the matter was taken under advisement. So the best way to persuade us is give us a bystander's report if you don't want to pay for a transfer. And why hasn't that been done? Well, I thought that when the court finally corrected the record and sent the file to Iroquois County that the matter had become official at that point in time. What else could I do? Because the time, you know, if we go back and bind ourselves, whether it's the 18th or the 21st of June or any time after that before about October the 15th, the appellant is out of luck. But during that whole period of time, we're in the dark calling the clerk. The clerk says we know nothing. Counsel, that's one minute. I'm as troubled as you are, but, you know, I think it would be a gross miscarriage of justice if these appellants would be denied their day in court because, you know, a judge is reassigned out of county and the file stays in her chambers, you know, unattended and never returned to the clerk. And I do my diligence repeatedly over time trying to find out what the decision is and finally contact the judge directly. And then she does express the surprise. But, you know, I would hope that that time the train wreck was over, the train was back on the track, and the clients would get their due in court. Thank you. Thank you, sir. Thank you both for your arguments here today. This matter will be taken under advisement, and I think we've got another one after this, don't we? Okay, so we'll be in brief recess for a panel change. The court is now in recess.